# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**Richard GARCIA, Estanislado BENAVIDEZ,**
**Gilbert MAESTAS, Bobby YOUNG, and**
**Avelino ZUNI,**

    **Plaintiffs,**

**v.**                                                                       **No. CIV. 00-1513 JP/DJS**

**SANDIA NATIONAL LABORATORIES**
**and Jose ARCHULETA, Individually and as**
**an employee of Sandia National Laboratories,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

On December 21, 2000 Plaintiffs filed a motion to remand (Doc. No. 6). That motion will be granted.

**I.**      **Background**

According to the allegations in the Complaint, Plaintiffs were at all relevant times employees of Sandia National Laboratories or Sandia Corporation ("Sandia"). On September 19, 2000 Plaintiffs filed suit against Sandia in New Mexico state court. On September 29, 2000 Plaintiffs served their Complaint on Defendant Archuleta. On October 5, 2000 Plaintiffs served Sandia.

Plaintiffs' Complaint consists of eight counts, the seventh of which alleges breach of implied contract. Each of Plaintiffs' eight counts relates in some way to allegedly wrongful conduct by Defendant Archuleta, each Plaintiff's supervisor. Each of Plaintiffs' eight claims, on its face, appears to be brought under New Mexico common law or New Mexico statutes.

However, Defendants contend that federal statutory law preempts Count VII.  Consequently, on October 27, 2000, Defendants removed the case to this court.

On November 24, 2000 Plaintiffs moved to remand the case to the state court.

## II.     Discussion

Sandia and its owner, Lockheed Martin Corporation, published a "booklet" titled the "Sandia Code of Ethics and Standards of Conduct" ("Code").  (Pls' Memo. Ex. C at 2.)   A provision in the Code states

> Respect for the individual is the basis of civility in organizational settings.  It requires that we treat people with the common conventions of courtesy and that we avoid actions, words, or displays that may be unkind or offensive to others.  These basic principles of respect apply universally, regardless of an individual's position or performance.

(Id. at 4.)

Plaintiffs in Count VII allege that this passage establishes an implied contract between Plaintiffs and Sandia which Sandia breached by allowing Defendant Archuleta to discriminate against Plaintiffs.

> Section 301 of the Labor Management Relations Act of 1947 ("LMRA") states that
>
> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  Plaintiffs are union members governed by a collective bargaining agreement ("CBA").  Defendants contend that section 301 of the LMRA and case law construing section 310 preempt Count VII because of Plaintiffs' union membership and the alleged interrelation of their implied contract claim with the CBA.

### A. Terms of the CBA and an implied contract

"Section 310 governs claims founded directly on rights created by [CBAs], and also claims substantially dependent on analysis of a [CBA]." Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987) (quotations and citations omitted) (finding that section 301 did not preempt plaintiffs' breach of employment contract claims even where plaintiffs covered by CBA). Plaintiffs contend that construing their implied contract claim will not require reference to the CBA and that section 310 therefore does not control.

The lawyers in this case battled over the same legal question in a factually distinct case. In Garley v. Sandia, No. CIV. 98-1127 JC/RLP (D.N.M. Feb. 4, 1999) ("Garley I"), Sandia fired the union-member plaintiff, then reinstated him following an arbitration hearing provided under the terms of a CBA. See Garley I at 1-2. The plaintiff then sued in state court alleging, inter alia, breach of an implied contract created by Sandia's Code and other documents. See Garley, No. 99-2255, 2001 WL 8308 at *10 (10th Cir. Jan. 3, 2001) ("Garley II"). As in this case, Sandia removed, citing section 301 of the LMRA, and the plaintiff filed a motion to remand, arguing that section 301 of the LMRA did not preempt his contract claim. See Garley I at 2-3.

The plaintiff in Garley believed that Sandia's Code and other non-CBA documents created a contract. See Garley II at *4. Unlike the contract in this case, the alleged implied contract in Garley concerned "criteria . . . for progressive disciplin[e]" which Sandia allegedly violated in discharging the plaintiff. Id. Further unlike this case, Sandia in Garley identified several articles of the CBA concerning investigation and termination of employees which Sandia contended would require construction in resolving the plaintiff's contract claim. See Garley I at 4. The district court agreed and denied the plaintiff's motion to remand. See id. at 6. The plaintiff

appealed.

On January 3, 2001, after the parties in this case had briefed the pending motion to remand, the Tenth Circuit upheld the district court's decision not to remand Garley. First, the Tenth Circuit quoted the Supreme Court's recognition in Williams that "a plaintiff covered by a [CBA] is permitted to assert legal rights independent of that agreement, including state-law contract rights, so long as the contract relied upon is not a [CBA]." See Garley II at *10. Then, the Tenth Circuit noted that Sandia's Personnel Policy and a "Director's Memo" concerning employee discipline indirectly referenced the CBA. See id. Accordingly, the Tenth Circuit found that the terms of the alleged implied contract were "'inextricably intertwined with consideration of the terms of the labor contract'" and affirmed the district court. Id. (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985)).

The cases on which Defendants rely that predate the Tenth Circuit's decision in Garley illustrate quite similar reasoning. (See Defs' Resp. at 7) (citing Henderson v. Merck and Co., Inc., 998 F. Supp. 532 (E.D. Pa. 1998) and Nylin v. The Boeing Co., No. 97-36059, 1998 WL 668134 (9th Cir. Sept. 14, 1998)). In Henderson, the union-member plaintiff brought a breach of contract claim based on his employer's policy on alcoholism, as outlined in an employee manual. See Henderson, 998 F. Supp. at 538. The court found that section 310 preempted the plaintiff's contract claim. See id. at 539. Whether the defendant complied with the company's alcohol policy was part of "the larger inquiry," namely, whether his discharge violated the terms of the CBA. Id. Significantly, the court then identified several of those CBA terms it would need to construe. Id. Even the Ninth Circuit, it is brief Memorandum in Nylin, explicitly identified CBA provisions it would need to interpret to determine whether the employer breached a contract

4

regarding progressive discipline which the plaintiff claimed was set forth in a personnel manual. See Nylin at **1.

In this case, in contrast, after reviewing the CBA, I have been unable to identify any provisions which Plaintiffs' implied contract claim might implicate. Moreover, I cannot find any direct or indirect references to the CBA in the materials which give rise to Plaintiffs' implied contract claim. Defendants also apparently cannot identify any pertinent portions in either the CBA or the Sandia Code. Defendants never cite to any CBA provisions, notwithstanding their attachment of the CBA to their notice of removal and their frequent general references to it.[1] Defendants rarely even mention the Sandia Code. Thus, I cannot conclude that resolution of the terms of Plaintiffs' implied contract claim, based on the Sandia Code, is inextricably intertwined with the CBA.

B.   **Existence of the CBA and an implied contract**

Defendants' position, while not crystal clear, may instead be that while individual terms of the CBA are irrelevant, the CBA's mere existence is important.[2] Defendants state that

---

[1] Defendants filed the entire 139-page CBA with their notice of removal in arguable violation of local rules. "A party may file only those pages of an exhibit which are to be brought to the court's attention." D.N.M. LR-Civ. 10.5 (indicating also that exhibits "to a motion, response or reply" must not exceed fifty pages, unless all parties agree). A party must also highlight the relevant portions of the pages of an exhibit which it wishes to call to the court's attention. See D.N.M. LR-Civ. 10.6; see also Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of [evidentiary] materials, but is not required to do so.").

[2] It may even be, although it is unlikely because it so clearly meritless, that Defendants argue for federal jurisdiction on the ground that Plaintiffs have waived their ability to assert employment contract claims outside of the CBA because of their coverage by the CBA. In such an instance a court would need to interpret the CBA, which may pose a federal question. However, the presence of a federal question, even under section 310, in a defensive argument does not create federal subject matter jurisdiction. See Williams, 482 U.S. 398-99.

"[d]etermining whether an employment manual constitutes an implied contract is a question of fact to be discerned from the totality of the circumstances surrounding the parties' employment relationship."  (Defs' Resp. at 7) (citing Hartbarger v. Frank Paxton Co., 115 N.M. 665, 675-76, 857 P.2d 776, 786-87 (1993); Newberry v. Allied Stores, Inc., 108 N.M. 424, 427, 773 P.2d 1231, 1234 (1989).  One of the relevant circumstances, Defendants suggest, is the mere presence of a labor agreement.

Hartbarger and Newberry in fact indicate that whether a employment manual gives rise to an implied contract depends upon whether the employment manual controls the relationship to the point that "an employee could reasonably expect his employer to conform to the procedures it outlined."  Hartbarger, 115 N.M. at 672, 857 P.2d at 783; Newberry, 108 N.M. at 427, 773 P.2d at 1234.  The existence of a document like the CBA, between union-represented Plaintiffs and their employer, will probably factor into the analysis of Plaintiffs' reasonable expectations.  See, e.g., Hartbarger, 115 N.M. at 673-75, 857 P.2d at 784-86 (weighing employee handbook, employer custom, supervisor's statements, and company retirement plan, finding no implied contract to terminate only for just cause).  However, this does not mean that the CBA is inextricably intertwined with Plaintiffs' implied contract claim so that section 301 of the LMRA preempts it.  "[N]ot every dispute concerning employment, or tangentially involving a provision of a [CBA] is preempted by § 301 . . . . Claims bearing no relationship to a [CBA] beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by § 301."  Williams, 482 U.S. at 396 n.10.  The CBA, as just one of multiple factors for a court to consider in analyzing whether an implied contract exists, is truly tangential to the contract claim in this case.  Thus, section 310 simply does not preempt the breach of implied contract claim in

6

Count VII.

Because all of the other claims in this case are creatures of state law too, between allegedly non-diverse parties, this case will be remanded to the New Mexico state court under 28 U.S.C. § 1447(c).

IT IS THEREFORE ORDERED THAT Plaintiffs' motion to remand (Doc. No. 6) is granted.

IT IS FURTHER ORDERED THAT this case is remanded to the Second Judicial District Court for Bernalillo County, New Mexico.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**